IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Criminal No. 06-193 |
| | ) | See Civil Action No. 11-636 |
| SEAN REED, | ) | |
| | ) | |
| Defendant/petitioner. | ) | |

MEMORANDUM OPINION

BLOCH, District J.

Petitioner, on May 13, 2011, filed a pro se "Motion to Vacate under 28 U.S.C. § 2255" (Doc. No. 97) and on June 2, 2011, filed a memorandum in support thereof (Doc. No. 100). Upon consideration of this motion, and upon further consideration of the Government's response (Doc. No. 105), filed on July 1, 2011, and Petitioner's reply thereto (Doc. No. 112), filed on September 12, 2011, the Court denies the Petitioner's motion for the reasons set forth below.

I. **Background**

On April 8, 2008, Petitioner was convicted at trial of one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) (1) and 924(e). (Doc. No. 51). The Court originally scheduled sentencing for July 3, 2008, (Doc. No. 64), but during the course of the proceeding the Court determined that it needed additional time and information to determine whether a downward variance was warranted by the facts of the case. The Court ordered the parties to brief the issue and continued the sentencing to September 2, 2008. (Doc. No. 68). At the continuation of the sentencing, the Court denied Petitioner's request for a downward variance and sentenced him to 235 months' imprisonment, which was at the bottom end of the applicable guideline range. See Tentative Findings (Doc. No. 61). Petitioner filed a Notice of Appeal from

1

the Court's final judgment on September 16, 2008, challenging his conviction and sentence. (Doc. No. 70). The United States Court of Appeals for the Third Circuit ("Third Circuit") affirmed Petitioner's conviction and sentence on August 13, 2009.[1] (Doc. No. 85). On December 15, 2010, Petitioner, acting pro se, filed his first Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 89).[2] Petitioner subsequently withdrew his motion and filed the present Motion to Vacate on May 13, 2011. (Doc. No. 97).[3]

II. **Discussion**

---

[1] The Court notes that the mandate was issued on September 4, 2009 (Doc. No. 86), and that the United States Supreme Court denied Certiorari on December 14, 2009. See Reed v. United States, 130 S.Ct. 1027 (2009).

[2] On December 16, 2010, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. (Doc. No. 91). With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. (Id.). Petitioner indicated he wanted to withdraw his motion and file an all-inclusive petition and the Court granted his request to withdraw his motion on January 13, 2011. (Doc. No. 93). Petitioner subsequently moved for an extension of time to file his petition and the Court granted this motion and ordered that the petition be filed by May 15, 2011. (Doc. No. 96).

[3] Although Petitioner's brief was not filed until June 2, 2011, the arguments contained therein were merely an expansion of the facts underlying the claims contained in the original petition and therefore relate back to the May 13, 2011 petition under Rule 15(c) of the Federal Rules of Civil Procedure. See United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000). The Court also notes that it will address Petitioner's claims on their merits because the issue of whether he timely filed his original December 15, 2010 petition is unclear from the record and the Court will not dismiss his claims based on any statute of limitations defense where it cannot clearly discern the date of the pertinent mailing. Petitioner claims that the mailing envelope was postmarked December 12, 2010, and the Government asserts that the postmark is difficult to discern. The Court notes that the mailing does appear to state "Dec 12" and that it is unlikely that the petition was mailed after December 14, 2010, if it was received and filed on December 15, 2010. See (Doc. No. 89-1).

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veteran Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Petitioner brings his pro se motion pursuant to 28 U.S.C. § 2255.[4] An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner's motion is premised upon seven separate claims of ineffective assistance of counsel.[5] Indeed, the proper and preferred vehicle for advancing claims of ineffective assistance of counsel is through a Section 2255 motion. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

In order to prevail on a claim of ineffective assistance, a defendant:

> must show both that: (1) counsel's representation fell below an objective standard of "reasonableness under prevailing professional norms;" and (2) [he] suffered prejudice as a result – that is, there is a reasonable probability that, but for the counsel's deficient performance, *the result of the proceeding would have been different.*

Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)) (emphasis added). Although Strickland requires a successful demonstration of

---

[4] This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

[5] The Court notes that it will not consider the argument raised in Petitioner's "Amendment/Supplemental Ground to Movant's §2255 Motion" (Doc. No. 108), because this document seeks to add a new claim/ground for relief and thus is considered untimely. See Thomas, 221 F.3d at 436.

3

both ineffectiveness and prejudice, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[6] Strickland, 466 U.S. at 697.

## Ground One

Petitioner's first contention is that his counsel was ineffective for failing to object to the Court's statement requiring him to proceed to trial with his counsel "regardless." See Motion to Vacate (Doc. No. 97 at 4). The basis for Petitioner's argument arises from a statement that the Court made at a January 3, 2008, motions hearing held on Petitioner's motion to withdraw counsel and motion for substitute counsel. See Pro Se Motion to Withdraw as Attorney (Doc. No. 34); Motion to Disqualify Attorney and Motion for Appointment of New Counsel (Doc. No. 36). These motions were filed by Petitioner on his own behalf and indicated that he was dissatisfied with counsel's representation because counsel refused to file a frivolous suppression motion despite Petitioner's insistence, and because counsel was urging him to plead guilty, which Petitioner perceived as counsel's unwillingness to zealously advocate for him.

At the January 3, 2008, hearing, the Court found that no good cause existed for the substitution of new counsel and explained that a mere disagreement in trial strategy, or a pessimistic outlook of the case by counsel were insufficient grounds to grant Petitioner's request for substitute counsel. After the Court explained its reasoning, the following exchange took place:

> Court: By appointing new counsel for you, Mr. Reed, there's no reason -- whoever would be appointed is going to have the same problems that Mr.

---

[6] Indeed, the Third Circuit has endorsed "the practical suggestion in Strickland to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005) (quoting United States v. Mccoy, 410 F.3d 124, 132 n.6 (3d Cir. 2005).

4

> Livingston has, especially when you don't cooperate with them. He's not going to present an argument that is not well-founded and is not proper just because you want him to. He has no duty to do that and any other attorney has no duty to do that. Now, my advice to you would be to cooperate with your attorney and allow him -- you don't have to plead. You have every right to go to trial, but you should provide him with all the assistance you can to prepare for that trial and if you don't do that, you do that at your own peril. You just don't get new counsel because you don't like your attorney and because you disagree with his advice or his strategy. . . .
>
> Petitioner: You're saying regardless he's my lawyer?
>
> Court: **He is your lawyer regardless; that's right. You don't get to pick who you want. If you pick your own attorney and pay your own attorney, you get to pick who you want. When you get appointed counsel, you don't get to pick who you want.**

Transcript of January 3, 2008, Hearing (Doc. No. 75 at 27-30) (emphasis added).

Petitioner argues that his counsel was ineffective for failing to object to the Court's "misstatement of law" that his counsel was his "lawyer, regardless" because he claims that "the Court's 'regardless' comment did not leave open the possibility of self-representation and essentially precluded the Movant's exercise of his fundamental right to self-representation by not including that as a possible option and resolution to Reed's dissatisfaction." Petitioner's Memorandum of Law in Support of Motion to Vacate (Doc. No. 100 at 7-8). Petitioner argues that he was prejudiced as a result of counsel's deficient performance, because he was denied the right to represent himself and that "there is certainly a 'reasonable probability' that given the choice to represent himself, Reed would have done so rather then [sic] continue with counsel." (Id. at 10). He claims that this alternative scenario constitutes "a different result as required by Strickland." (Id.). In so arguing, Petitioner cites to United States v. Welty, 674 F.2d 185 (3d Cir. 1982) and Faretta v. California, 422 U.S. 806 (1975) in support of his position that the Court had a duty to advise him of his right to proceed pro se after it denied his motion for substitute counsel. Petitioner contends that, pursuant to Welty and Faretta, "a lawyer cannot be forced upon

5

a defendant who wishes to defend[] himself," and that the Court was required to apprise him of the options available to him (*i.e.* that he had the right to represent himself instead of continuing with his current counsel). See (Doc. No. 100 at 7).

Petitioner's first contention is without merit. First, the Court did not misstate the law with respect to the options that were available to Petitioner at the January 2008 hearing because Petitioner never expressed any interest in representing himself at trial. Indeed, the sole purpose of the hearing was to (1) address Petitioner's motions requesting new counsel that he had *filed on his own behalf* and (2) resolve the issue of whether good cause existed for the substitution of new counsel. To be sure, Petitioner's motions specifically requested that he receive new counsel and did not contain any request or statement that reasonably could have been construed as a request, to conduct his own defense at trial.

Second, Petitioner's reliance on Welty and Faretta is misplaced, as they do not stand for the proposition that a district court has a duty to advise a criminal defendant of his right to proceed pro se in the absence of his expressed desire to represent himself. To the contrary, the Third Circuit has held that a district court is not obligated to *sua sponte* advise a defendant of his right to self-representation. See United States ex. Rel. Soto v. United States, 504 F.2d 1339, 1344 n. 16 (3d Cir. 1974) (*overruled on other grounds*) (holding that a district court has no duty to advise a defendant of his right to proceed pro se because "the value promoted by pro se representation is primarily one of free choice, rather than the conduct of a trial fair to the defendant."); United States v. Pennycooke, 65 F.3d 9 n.1 (3d Cir. 1995) (noting that Faretta "overruled the Soto holding that a defendant does not have a constitutional right to proceed pro se but it did not disturb Soto to the extent that the Soto court indicated that even if the defendant did have that right the district court was not obliged to advise him or her of it.").

6

Moreover, Welty and Faretta are inapposite as the defendants in those cases clearly and unequivocally communicated their desire to represent themselves to the court. Indeed, the defendant in Welty explicitly requested two alternative forms of relief – that he either receive new counsel or be allowed to proceed pro se. See 674 F.2d at 187. He specifically requested the opportunity to represent himself in the event that the court denied his motion for substitute counsel, and, because he expressly stated that he wanted to proceed pro se if he did not receive new counsel, the court was obligated to ensure that his decision to forego counsel and represent himself was validly made. Id. at 187. It was the defendant's request to exercise his right to self-representation that triggered the court's duty to explain the nature of his constitutional right and determine whether he truly understood the consequences of his decision.

Likewise, the defendant in Faretta insisted on conducting his own defense at trial. See 422 U.S. at 807. The trial court, however, did not believe that the defendant was able to represent himself adequately and appointed a public defender to represent him at trial. The United States Supreme Court vacated the judgment and remanded the case for a new trial because it found that the lower court erred by forcing a lawyer upon a defendant who "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Faretta, 422 U.S. at 835-86.

Thus, Welty and Faretta merely stand for the proposition that, *after a defendant has clearly requested the opportunity to represent himself,* a district court is obligated to explain his right to self-representation and to ensure that his decision to forego counsel is made knowingly and intelligently with awareness of the attendant consequences of that decision. The record in this case indicates that Petitioner *has never* requested the opportunity to represent himself or expressed any desire to conduct his own defense, despite evidence demonstrating that he fully

7

was aware of that option. Indeed, Petitioner filed two separate motions on his own behalf requesting new counsel and stated in one motion that he was "acting pro se" and that he was "not sophisticated in the practice of law nor applying the law in this motion" and that he wanted to go to trial with a new lawyer. See (Doc. No. 36 at 1, 5). These motions reflect that Petitioner was cognizant of his right to self-representation and they lack any indication that Petitioner was entertaining the idea of representing himself at trial, let alone that he desired the opportunity to exercise that right. Furthermore, at no point during the January 3, 2008 hearing did Petitioner specifically request, or make any statements which reasonably could have been construed as a request, to conduct his own defense at trial. To the contrary, when provided with the opportunity to explain the basis for his motions, Petitioner stated "I am here today because I do want to disqualify my counsel." Transcript of January 3, 2008, Hearing (Doc. No. 75 at 5). In light of the fact that Petitioner never communicated a desire to represent himself, the Court was under no duty to *sua sponte* advise him that he had the right to proceed pro se instead of continuing with his counsel.[7] Petitioner's counsel, therefore, did not provide ineffective assistance by not objecting to the Court's statement, and even if he had somehow provided deficient performance in this respect, Petitioner cannot demonstrate that he suffered any prejudice as a result because the mere fact that he would have proceeded pro se is not the type of "different outcome" contemplated by Strickland and its progeny.[8]

Ground Two

---

[7] Given the Court's finding that it was under no duty to advise Petitioner of his right to proceed pro se, the Court did not violate Petitioner's constitutional rights and thus there was no "Welty error" to raise on appeal. Consequently, Petitioner's seventh ground for relief is without merit as appellate counsel was not ineffective for failing to raise a frivolous argument. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

[8] To demonstrate prejudice Petitioner must show that he was deprived of a "fair trial, a trial whose result is reliable" and that "but for counsel's unprofessional errors, the *result of the proceeding* would have been different." Strickland, 466 U.S. at 687, 694 (emphasis added).

8

Petitioner's second and related contention is that his counsel was ineffective for failing to advise him of his right to self-representation. He claims that he was unaware of the fact that he could represent himself prior to the January 3, 2008 hearing, and that if his counsel had advised him that he had a right to self-representation, he would have insisted on defending himself at trial. This argument can be disposed of in short order, as the record indicates that Petitioner was aware of his right to self-representation prior to the hearing since he filed two motions for substitute counsel pro se, and also filed a motion to suppress on his own behalf. See (Doc. Nos. 34, 36, 45). Furthermore, as the Government points out, Petitioner exercised his right to represent himself in six different cases before the January 3, 2008 hearing. See Government's Response (Doc. No. 105 at 10). Thus, the Court finds Petitioner's claimed ignorance as to his right to self-representation to be incredulous. Even if counsel somehow was ineffective in failing to advise him of that right, Petitioner has not demonstrated prejudice as he has not explained how someone who admittedly is "not sophisticated in the law" could have achieved a more favorable outcome at trial than a seasoned federal public defender.

## Ground Three

Petitioner's third contention is that his counsel was ineffective in failing to adequately advise him of his sentencing exposure and the advantages/disadvantages of proceeding to trial versus pleading guilty. Petitioner fails to explain the erroneous advice he allegedly received from counsel and does not describe what kind of information his counsel failed to convey that would have changed his mind about going to trial. The record very clearly indicates that the "breakdown in communication" between Petitioner and his counsel was premised entirely on Petitioner's perception that all his lawyer wanted him to do was plead guilty and that he was not interested in zealously advocating a defense at trial. His claim that he was not adequately advised

9

of the consequences of proceeding to trial is belied by the record, as the evidence indicates that counsel: (1) attempted to secure a plea offer, (2) explained the offer to Petitioner, (3) repeatedly reinforced the strength of the Government's case and made clear that the likelihood of an acquittal was minimal, and (4) conveyed the general risks associated with trial. See Transcript of January 3, 2008 Hearing (Doc. No. 75); See Transcript of Sentencing (Doc. No. 76 at 19). The record even indicates that the possibility of a 5K was contemplated at one point, which demonstrates Petitioner's awareness that he could have secured a lesser sentence if he pled guilty. Petitioner, however, was adamant about wanting to go to trial because he believed that the lack of DNA evidence would suffice to acquit him. Unfortunately for Petitioner, he was wrong, and his attempt to now claim that he would have pled guilty if he had been "properly advised" is unpersuasive.[9]

## Ground Four

Counsel's fourth asserted ground for relief is that his counsel was ineffective in failing to object to the Court's "denial of meaningful allocution," as the Court allegedly did not provide him with an opportunity to influence his sentence until after it determined that a downward variance was unwarranted. This argument is completely unsupported by the record which indicates that the Court actually continued the initial sentencing in order to give the parties additional time to brief the issue of whether the Court should grant Petitioner's request for a variance. Indeed, at the first sentencing hearing which took place on July 3, 2008, Petitioner's attorney was provided the opportunity to present evidence as to the appropriate sentence and he argued at length as to why a variance was warranted. The Court clearly gave meaningful consideration to whether a variance was appropriate as evidenced by the fact that it continued the

---

[9] The Court further finds that Petitioner's fifth ground of relief is without merit for the same reasons as it is merely "a repetition of Ground 3, ante, pgs. 13-16 . . . ." (Doc. No. 100 at 17).

10

sentencing for two months in order to review case law and contemplate the issue. It even directed the parties to brief the issue and Petitioner's counsel filed a sentencing memorandum which reiterated their position as to why a variance was appropriate.

Indeed, it was only after the Court heard arguments and evidence at the initial hearing and reviewed the briefs and case law that it decided to deny the motion for a variance at the continuation of the sentencing on September 2, 2008. At this sentencing, the Court personally addressed Petitioner and provided him with an opportunity to present any argument or evidence in mitigation of his sentence. Petitioner took advantage of the opportunity to try to influence his sentence and apologized to his family, *explained why he felt that the mandatory minimum sentence of fifteen years was appropriate*, took responsibility for his past criminal conduct, and expressed that he had a new appreciation for his life. See (Doc. No. 83). The Court did not interrupt him or limit his allocution in any way, and did not impose sentence until after it had heard from Petitioner.

Under Federal Rule of Criminal Procedure 32(i)(4)(A)(ii), the Court is required to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." The Court fulfilled its duty under this rule by allowing defense counsel ample opportunity to present evidence and argument in favor of a variance and by personally addressing Petitioner and allowing him an opportunity to address the Court prior to the imposition of sentence. The fact that the Court denied his request for a variance prior to allowing him to speak does not constitute a denial of Petitioner's right of allocution. See United States v. Chaudhry, 321 Fed. Appx. 119, 124-25 (3d Cir. 2009) ("Chaudhry's contention that he should have been allowed to speak earlier, while the Court was making legal and factual findings, and as his defense counsel was presenting arguments, is without merit. The Court

11

personally addressed Chaudhry prior to sentencing, providing him with the opportunity to present any mitigating evidence on his behalf, and placed no limitation on Chaudhry's remarks. Rule 32 requires no more.").

## Ground Six

Petitioner's sixth contention, that his appellate counsel was ineffective for failing to raise the "fair cross-section" issue on appeal, also lacks merit. In support of his argument Petitioner cites to Duren v. Missouri, 439 U.S. 357, 364 (179), and Allegheny County jury pool statistics derived from a 2002 Pittsburgh Tribune Article, which predates his trial by six years, in an attempt to demonstrate that African-Americans were systematically underrepresented in the jury pool from which his panel was selected. As the Government notes, Petitioner makes no attempt to offer any evidence to establish his prima facie case under Duren, and does not even reference the twelve western district counties from which the jury pool was selected. Petitioner fails to support his claim with any actual, relevant statistics and only makes the conclusory allegation that the "African-American representation in the jury pool from which Reed's petite jury was selected was not fair and reasonable in relation to the number of such persons in the community." (Doc. No. 100 at 19). Even assuming for the sake of argument that African Americans were underrepresented in the jury pool, Petitioner has failed to demonstrate that this "underrepresentation is due to systematic exclusion of the group in the jury selection process." Duren, 439 U.S. at 364. Thus, Petitioner cannot meet his burden under Duren, and even if he could, he still has failed to establish prejudice because he has set forth nothing more than a bare-boned allegation that is unsupported by any facts or evidence.

## III. Conclusion

For all the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

Date: January 2, 2013    s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

cc:    Sean Reed, #09576-068
FCI McKean
P.O. Box 8000
Bradford, PA 16701